Case No. 16-1094, CalPortland Company, Inc. Petitioner v. Federal Mine Safety and Health Review Commission and Secretary of Labor. Mr. Lundgren for the petitioner. Mr. Waldman for the respondents. Mr. Lundgren, good morning. And thank all counsel for coming 30 minutes early. I wouldn't say I said it at 6 o'clock last week. We started at 8.30, so we're not at the beauty of some circumstances. Good morning, Your Honors. Brian Lundgren on behalf of Petitioner, CalPortland Company. I have reserved three minutes for rebuttal. The issue before the court is the agency's statutory authority under 30 U.S.C. Section 815, which we refer to as Section 105. The matter involves an order for temporary reinstatement that was issued by the agency against CalPortland. The agency... Counsel, let me just stop you and say, we are familiar with it. Why don't you address why we have jurisdiction? Absolutely, Your Honor. Both parties have conceded that the court has jurisdiction. The Secretary and CalPortland both contend that jurisdiction exists in two fashions. One, that the temporary reinstatement order is a final agency action that conclusively resolves that issue, meaning temporary reinstatement. Second, that the collateral order doctrine also provides jurisdiction because the temporary reinstatement order conclusively resolves that issue. There would be no appealability of that issue if we were not allowed to appeal the order. Isn't your second argument your stronger one? Yes, Your Honor. In fact, that's the one that I primarily made. However, the Secretary raised the issue that the Secretary also believes it constitutes final agency action and that, too, gives jurisdiction. We had argued both with a focus on the collateral order doctrine. Final agency action, the theory being there's a right to have temporary reinstatement while one's pressing a claim, and this was the final decision as to that temporary right. That's exactly right, Your Honor. And you analogize it to temporary injunctive relief that is final for the purposes of appealability? That's correct, Your Honor. And the Secretary raised that point, and that point's also made in Young v. Lone Mountain Processing, that this is extraordinary. The issue at hand is extraordinary remedy akin to a preliminary injunction that provides appellate jurisdiction when you've exhausted the administrative remedies on that issue. Going to the collateral order basis, this 11th Circuit case, Jim Walter Resources, in footnote 4, this Supreme Court case that said, and it's in a different statutory context, but it said that the Supreme Court said it still had jurisdiction to determine the validity of the temporary reinstatement. Even though the final reinstatement proceeding was already completed. And I'm just, I haven't looked at that case. It's a different statute, Brock v. Roadway Express. But what's your position about if we don't exercise jurisdiction now and after the merits are reached in December, whether we could review the legitimacy of the temporary reinstatement? That issue is addressed, I believe, also by the dissent in Cobra Natural Resources, which we cite on this case. And the issue is, does this become moot when we have a final determination because when that happens, the temporary reinstatement order will cease to exist in one way or another? It will either be replaced by a final agency determination that accords some rights to the complainant or it will cease to exist. But that's a different right. The final right is a different right, isn't it? It's a different right. And so the question of mootness is a good question, Your Honor, and I've struggled with it. But the issue, because of the case law, the issue is what could Cal Portland do after a final determination? And the case law suggests that, I think Cobra Natural Resources' dissent suggested, I believe some others, that we would have no real right at that point because the current position of the agency is that we cannot go back and recoup any payment of wages or anything that's occurred under the temporary reinstatement order. So if we were to have waited to appeal to this court, we would then be met with the argument that you don't have a right now to appeal from final judgment, Mr. Lundgren, because the issue is moot and the temporary reinstatement order ceases to exist. Well, how about the evading review exception? In other words, this whole argument about whether he's a minor or an applicant for employment is going to come up again when you have a predecessor and successor mine operator. So that it might be moot as to Cal Portland, but what about our exceptional jurisdiction? And that's why I believe the court should, under these doctrines, exercise jurisdiction because if the agency's temporary reinstatement order were never allowed to be reviewed by the court because of mootness, timing, or because it can't be reviewed upon a final judgment, the agency could, in effect, exceed its statutory boundaries at will. Without any review by the federal court, and that's why we believe the court should now act, one, because the temporary reinstatement order exists, and two, because we won't have a right to appeal that in a final determination. So absent jurisdiction now, the agency would be able to exceed congressional authority whenever it wanted without any review by the court. What is your reading of 816A2, which is in your appendix at A4, which gives us authority to grant temporary relief when we're considering any order issued by the commission? I'm going to pull up the statute and look at the exact language you're referring to. It's on A4, and it says, in the case of a proceeding to review any order issued by the commission under this chapter, the court may grant such temporary relief. I'm wondering, is that what you used when you applied for a stay? That was my understanding when I read this, Your Honor, though I'm not sure this in any way, nor would I suggest it, does limit your authority to take additional action to stay a case or to provide a remedy that allows the court to exercise its jurisdiction over an agency action to ensure that the agency is not avoiding judicial review of its case. How did Mr. Pappas' job under the new management differ from his job under the former management? What was his job under Marietta? We amended your question to say ownership rather than management. Ownership, I'm sorry, that's right. How was his job under Marietta different than his job under Cal Portland, if at all? Well, much of that is not in the record, Your Honor, because it happened after the temporary reinstatement order. So I'm speaking of things that didn't happen during the temporary reinstatement order. But what happened when the temporary reinstatement order was complied with by Cal Portland, as they had to while we reviewed before this court, is we tried to find Mr. Pappas a job at the facility. And then we tried to pay him under the new terms and conditions and benefits that exist now at Cal Portland, which are wholly different than what was at Martin Marietta. Let me try it this way. When he applied for the job with Cal Portland, what job did he apply for? And was it different in any significant way from the job that he had under Marietta? He applied for any job. ANY job? ANY. Any job you have that he could do. And the jobs are – Cal Portland uses less employees to run these facilities. The operational model is different. But his job before, he had been a miner, right? Right. He had been a laborer. A laborer, okay. And now, since in the arguments back and forth about exactly how to comply with a hiring order, there was discussions where we said, well, we want to have him go to this part of the facility and Amtchak took the position. You can't do that. He has to stand inside the facility right here. That's the only place he can work. And so essentially, we were limited in what we would normally have an employee do if we had hired that employee off the street by the positions that were being taken by Amtchak. You struck his argument, textual argument, with the word reinstatement, right? What does reinstatement mean? Isn't that your argument? How can he be reinstated to a job that's a new job? His job was gone. How can he be reinstated? Is that right? Is that the gravity of your argument? That is part of the statutory argument. There's two issues, is Congress has specifically identified the rights accorded to applicants for employment in Section 105. I've counted. There's ten statements. But has Congress addressed this issue? This is a unique circumstance, right? As I look at the statute, it talks about a minor can be reinstated. It doesn't say anything about an applicant because an applicant can't be reinstated. You can't go, you know, he hasn't been there before. But this seems to be a different sort of circumstance that doesn't seem to be contemplated by the statute where somebody has a job, new ownership takes over. He wants that job back, but he's been denied the job allegedly in pursuit of his rights. That's what the temporary reinstatement argument is. It seems to fall, it doesn't seem, the statute doesn't seem to address this circumstance, does it? And the commission came up with a new phrase. What did they call this? They called this a minor retention decision. And that seems to be an accurate description of what it is, but there's nothing in the statute about minor retention decisions. You're correct. The statute does not say you have authority to order the hiring of applicants for employment who may have in the past worked at that mine. The statute does not give that authority. And I think a plain reading of the statute takes that authority away from the agency, and the agency's own precedent says that, too. Because he's an applicant. You think he's an applicant. He's an applicant for employment. Yeah, yeah. And number one. Well, he's a minor as well, though, right? I mean, it doesn't tell, it doesn't say, the definition of minor here isn't so limited that he has to be a minor for a certain employer. He's a minor, right? He comes to the mine and says, I'm a minor. I want to work here. He also happens to be an applicant. We have a strange circumstance. Would that not suggest that the minor referred to in the statute has to be a minor in this employment? Yeah. He didn't, he wasn't mining coal in West Virginia or Colorado. He was working in the definition of minor for an employer, Martin Meridian. But that doesn't make him a minor for purposes of applying for a job with the current. Yeah, when you said he applied for any job, does that mean there were jobs there that wouldn't require him to be a minor? That's not in the record. I believe there are jobs there that may necessarily not have him be a minor. I don't, there's certainly. What's he doing now? What's the job he's doing now? Is it a minor? He's working as a laborer in the mine. Okay. But we're limited in how we can use him because of compliance arguments that have been raised. Well, isn't your argument that he is a minor who can only be instated or hired? He cannot, he can't even be retained because the owners have changed. He's certainly not a minor who can be rehired or reinstated. That's correct, Your Honor. He's a minor, he was a minor for his past employer. He's an applicant for employment at Cal Portland. He's never worked for Cal Portland. He's clearly applied. It was a hiring situation. And the statute addresses specifically the rights of applicants for employment. And it does not, it's specific. It seems to me part of it turns on the meaning of reinstatement. And the statute doesn't seem to be particularly clear about that. I mean, my guess is if you were to talk to someone on the street and ask them, is he being the same, he was a minor at this mine, he wants his job back at that mine, some people would say, well, that's reinstatement. New employer, new owner, but is it a different job? That's what I have to struggle with. Well, hopefully I can help you here, Your Honor. Reinstatement, first of all, we would apply the normal dictionary definition, which means to put in a former position or past position that one has held previously. That's what he wanted, right? But that doesn't exist anymore. Why? Because new owner? Because if he wanted to do that, he could have brought an action against Riverside Cement Company and Martin Marietta and said, I want to be Martin Marietta still owns Riverside Cement Company. It still exists. It still has the Crestmore facility. And he could have said, I have a right to be reinstated by you, Martin Marietta, Riverside Cement Company. In a different mine. Well, then the issue would have arisen. I'm speaking hypothetically, but it would have arisen. There would have been some discussion. Well, that exact position doesn't exist, ALJ. What do we do? Should we economically reinstate him given the impracticability? I'm speaking as if I'm Riverside Cement Company now, given the impracticability. That would have been the discussion, but they didn't bring an action against Martin Marietta or Riverside Cement Company for temporary reinstatement. Did Martin Marietta have any other mines nearby? The assets were purchased by four locations, Crestmore, National City, Stockton, and then Oro Grande. I don't have the exact geographical locations of these, but I know there was some testimony one is approximately 60 miles away. So here's part of the problem with your argument. So he has a job in the mine. He files a complaint. He's discharged from that job, right? He's got a job in the mine. The statute says he has a temporary right to that job as long as he has a complaint pending, right? As long as it's a temporary thing. And he's losing that right under your theory right now. He's losing that right now because the ownership changed. That doesn't have anything to do with what he did, but because the ownership changed. That's something that he has no control over. This statute is designed to protect workers who bring claims, right? They get a temporary right to that job during the pendency of their claim. And under your reading of it, he's going to lose that right, not because of anything that he's done, but because the ownership changed. Well, that's why I asked you about 816 whatever it is, B2, because he could, just like you could come to get a stay, he could come to us and say, I want to be temporarily hired or instated while the merits of my discharge are pending. And the resolution's the same, is he doesn't have that right under the statute. This is an extraordinary remedy. Congress specifically delineated when this extraordinary remedy may be imposed. And it's not just the statutory definition. And you think Congress was saying, you get this right, but you know what, if the ownership changes, tough luck. Congress was saying applicants for employment do not get this right, and that's clearly what he is. And it's not just the dictionary definition of reinstatement, which we would defer to. Congress in the statute talks about what rehire and reinstatement means. And it knows how to use the word rehire. At the end of 105C2, it talks about rehire and reinstatement to a former position. At the end of 105C3. You know, I used to be a textualist, and then the Supreme Court told me, I can't do that anymore. Just kidding. That's an inside joke. I understand your question, Your Honor, but the issue really is Congress made this decision, and the statute applies not just to employers, but to persons. And Congress said, only will we allow a temporary action to be taken pending a final order if it's a reinstatement of a minor to a former position. It doesn't exist here, Your Honor. And that would answer any attempt of temporary relief to the Court, Your Honor. Rob, you're out of time. We'll give you some time to reply. Mr. Waldman. May it please the Court. My name is Ed Waldman. I represent the Secretary of Labor and his agency, the Mine Safety and Health Administration, otherwise known as MSHA. Section 105C2's temporary reinstatement provision plays an integral role in achieving the overriding safety and health. I want to cut to my colleague, Chase. How can an employer reinstate somebody who never worked for him? Because he worked at the mine. The mine didn't work for them. How can they reinstate him when he never worked for them before? They never instated him in the first place. But they can reinstate him. No, they can't. You have to instate before you can reinstate. You have to reinstate before you can reinstate. Reinstate by its very structure requires that something had been there before, so it can be re-instated. That's what re-instated means in our English language. I don't see how you can possibly reinstate somebody whom you never instated. If that's the way that you were to interpret Section 105. That doesn't seem to me to have a lot of interpretation to it. It seems to be the plain language of the statute. That's the word Congress chose, reinstate. Yeah, but it's not interpreting. I'm just reading. Okay, well, it says reinstate. It doesn't say who's supposed to do the reinstating, and a minor is not. Why did you tell them to do it then? I mean, it does. Because they're the one who owns the mine and has the power to reinstate. But they never employed this person before. I don't understand your point that it doesn't say who. If it doesn't say who, you said who. You said them. I said how can they reinstate when they never instated? I don't know where you're going with that question, but it doesn't say who. It says reinstate. How do you reinstate somebody you never instated? By returning him to a position that he formerly held. With somebody else. Which position doesn't exist anymore because that employer no longer owns the facility. This man worked in the Oro Grande mine for 16 years. For Marietta. For Martin Marietta. Up until one tick of the clock before Cal Portland acquired the mine. Suppose the mine had closed down at that point. Suppose Martin Marietta had gone bankrupt entirely. Could you reinstate somebody into a position that no longer exists because the entity that employed him is gone? Could you do that? Well, if Martin Marietta had gone bankrupt, then presumably the assets would have been sold in bankruptcy. And the sale in bankruptcy is free and clear. So you could have traced the bankruptcy and then had him reinstated to whoever bought him out of bankruptcy? Pardon me? So you could have traced them in bankruptcy? Is that what you're telling me? No, I'm telling you the opposite. I'm telling you that in bankruptcy, under the bankruptcy statute, 11 U.S.C. section 363F, sale of assets is free and clear of any liability of the predecessor. And so if Cal Portland had purchased this mine from Martin Marietta in bankruptcy, it would have had no liability. Right. So where does the liability come from when it's not in bankruptcy? Liability comes from section 105C2. We should have reinstated him. That's correct. Okay. And you take that to mean instate? No, I take that to mean reinstate. So Congress is a superfluous rego in the beginning, then? No, not at all, because Mr. Pappas held a position as a miner at that mine for many years. Okay. I think I've got all the answers I'm going to get, whether I've got an answer or not. Thank you. Can I ask you about the dissenting commissioner and his reliance on Lone Mountain? I thought that was pretty persuasive. Why isn't it? Well, the facts in Lone Mountain are distinguishable, as the majority of the commission pointed out, in that the miner in Lone Mountain had not worked at the mine for which he was seeking to be reinstated at. But he was a miner. He was a miner, but it was at a different mine. All right. Why isn't this? Well, this is a different mine in that it's owned by a different operator, and it's the operator who has to do either the reinstating or the rehiring or the hiring or the instating. So why isn't that more like Lone Mountain in that it's a different mine, not physically, but it's being operated by a different operator, and that is the person who does the action of temporarily reinstating or not? Well, that's just the point, is that the fact that a new owner takes over a mine doesn't make it a different mine. It's still the same mine. It's still the same mine. They're using the same equipment. It's still the same mine, but what we're talking about is the entity that's taking the action of either temporarily reinstating or not. And if the dissent says you can't entity, you can't reinstate if you've never instated, what is wrong with that? I guess I'm asking just, I guess we know your position because I think I'm asking basically what Judge Sintel asked. Yes, and if I may, though, I'd like to explain the statutory context because you can't just look at the word reinstate in Section 105C2 in isolation and say that's the end of the story because Section 105C2 plays an integral role in achieving the overall safety and health purposes of the Mine Act by encouraging and empowering miners to raise safety and health issues at the mines where they work The trouble with purposive arguments in statutory interpretation is they inevitably prove more than you're offering them for. If you say we interpret the statute, no matter what it says, we interpret it to accomplish what we see as Congress's goal, then the task of interpreting statutes becomes writing statutes after we discern Congress's goal. Congress intended to provide whatever remedy it wrote in the Act. It didn't intend for us to come along and make new remedies. I'm not sure where you're getting with that argument. Correct, but Section 105C2 talks about reinstating miners as opposed to applicants. That's correct, and in this case... When you've never worked for somebody before, you're their applicant. You're not their miner. He was also a miner. Well, so was the fellow who worked across the ridge in some other mine. He was a miner, too, but not for purposes of this remedy. You can't come in from a mine across the mountain and say, well, I'm a miner, so I get this remedy. Okay, there's a difference between the remedy, which is temporary reinstatement, and eligibility for the remedy, which is all we're talking about here. Yeah, and you can't come in from a mine across the mountain and say, I'm a miner, therefore I'm eligible for this remedy. I agree with you. You have to be a miner for the employer that you're seeking employment for. No, where we disagree with you is that you have to be a miner at the mine where you want. How do you get that delineation, rather than a delineation that says you work for the mine in question, the employer in question? You can start with the statutory definition of a miner, which says an individual who is working in a mine. That would bring in, if you take that to the breadth of your testimony, that would bring in the person from across the mountain, wouldn't it? It wouldn't because you have to, as this court has recognized in the past, and as the commission has recognized many times, the word miner always has to be interpreted within the specific statutory provision where it appears. Precisely. Precisely. And that's the problem that I see here is you're not doing that. That's exactly what we're doing. Somebody that isn't described by the rest of the testimony. Do you think that Congress is addressing this circumstance? No. No. And if Congress is not addressing this circumstance, then the remedy doesn't exist, does it? This is purely a statutory remedy. So if Congress is not addressing this circumstance, where are you coming from by making this order? Why are we talking about this statute if Congress hasn't addressed it? Because the statute is ambiguous as to what Congress's intent would be in the case where an individual is both a miner working at the Oro Grande mine at the same time that he's an applicant for employment at that mine with some future operator who's on the verge of taking over that mine. And if we exclude Mr. Pappas here, then any miner who's in those shoes, that is specifically the shoes of an individual who's working at a mine where a new operator is about to take over. A new owner is about to take over. A new operator or a new owner. Well, that's two different things. That's right. That's right. But in this case, it's both. Cal Portland is the owner and the operator. The fact that it's a new owner is rather strong, isn't it? Isn't that rather a great change? Yes. But it doesn't change... Enough that as Judge Griffiths suggests, it doesn't come within the statute anymore. Because he's an applicant. He's not a miner for that employer. He's a miner for some other employer. It doesn't say miner for that employer anywhere in the statute either, Judge Santel. That's right. So I think... So you would contemplate the miner from across the mountain come over and claim the ruby? No. Right. As the Secretary's brief says, the ambiguity in Section 105C2, in that Congress didn't address the situation of when an individual is both a miner and an applicant for employment at the same mine, the way the Secretary interprets that is that if the miner is employed at that mine and his discrimination complaint arises out of his employment at that very same mine, then he's a miner for purposes of Section 105C2. And that's a reasonable interpretation of the text. I don't deny that Cal Portland's interpretation is reasonable as well, but Cal Portland's interpretation frustrates the purposes of the Mine Act by putting... Only if you follow the definition of purpose that you want to follow. Congress... Only if I follow... Congress only intends whatever remedy it grants. And when you come in here and argue that it doesn't accomplish Congress's purpose if you follow the language of state, that doesn't get you anywhere. We can only do what Congress says, not what they might have wanted to accomplish. If Mr. Pappas is a miner for purposes of 105C2, that does not automatically entitle him to temporary reinstatement at that mine.  It makes him eligible. But if he doesn't have a non-frivolous claim that Cal Portland was complicit in the discrimination, then he's not going to get temporary reinstatement. Cal Portland, in this case, has not appealed a finding that Mr. Pappas' discrimination complaint against it was non-frivolous. That's not an issue here. The only issue is whether this man was a miner. And if you hold that he was a miner, that doesn't mean that everybody in his shoes in the future is automatically going to get temporary reinstatement. It only means that they're going to be eligible for it if they can bring a non-frivolous discrimination complaint implicating the new owner of the mine. But, again, I have to emphasize that Section 105C2, on its base, does not resolve this question. It says miner. It says applicant for employment. It doesn't say what happens when one individual is simultaneously both a miner at that mine and an applicant. So what are we to do then? Your argument is, therefore, that the agency can interpret this ambiguity. But isn't another way to approach it? No, Congress hasn't created a remedy for this circumstance, and you can't create one where it hasn't. How do we decide between those two? And if we can fill in a gap, why couldn't Congress have said, shall order the immediate reinstatement, or reinstatement, or hiring? I'm sorry, or reinstatement. Certainly, Congress could have, Your Honor. Well, then we would know that it was when you had a miner who was also an applicant for employment that he could get a temporary reinstatement. We would know that. And that would have been easy for Congress to say, you know, if we just add the word instatement where it fits, if the miner happens to be both a miner and an applicant for employment. Yes, yes, I agree with you 100%, Your Honor, except that we can't assume that Congress will anticipate every conceivable circumstance that will arise. That's why we have courts to interpret the application of the statute in various circumstances which Congress might not have foreseen. And that's, I mean, Section 105c2 doesn't answer the precise question before this Court. The Secretary's interpretation does, in a way that's consistent with the Mine Act, and the Secretary's interpretation is entitled to deference if there's an ambiguity in the statute. Unless the Secretary's creating a whole cloth, a new remedy. Right. No, I agree with you. The second prong of Chevron is not with, assuming that you're correct if there's an ambiguity, which is not without doubt, the second step of Chevron is not without content. And if this creates a remedy that Congress is not creating, that's pretty prima facie unreasonable, if that's the case. I disagree with you, Your Honor. I only have six. You can disagree with me. I only have four seconds left to explain why. Your Honor, may I proceed? Of course. I disagree with you that Congress has not created this remedy. Congress did create this remedy. But you want to rephrase that as, if Congress has not created the remedy, then this is unreasonable. Are you really disagreeing with that statement? No. Okay, thank you. Thank you. All right. Does Mr. Lund, he doesn't have, why don't you take two minutes? I'll try to use less of that, Your Honor. All right. There is no silence. Congress has specifically identified the rights of applicants for employment under Section 105. It gives them rights in a final merits determination with respect to remedies. It does not allow them access to the extraordinary temporary action that took place in this case. It speaks directly to it, and absent any congressional intent to the contrary, that conclusive statutory language is controlling, number one. Number two, the entire concept of temporary reinstatement, as put in the language of the action by Congress, is reinstatement, which by dictionary definition does not include forcing somebody to hire somebody for a new position, number one. And number two, Congress in the statute talks about reinstatement. But the question is, what is his job? What is Mr. Pappas' job? Is it working in that mine, or is it working for a certain set of people? If it's working in the mine, then he's back in that old job, right? He's back in that old job. He wants to go back in that mine and have the job that he had before. The question is, at least in my mind, what's the significance of the fact that it's a new employer? Does that change the calculus at all? The fact that it's a new employer makes him an applicant for employment and changes the calculus. And to go to Judge Santella's point, is employment isn't a fixture that attaches to an asset and travels all through the legal system. And that's the type of argument they're making. And they're in the weeds and beyond the statute. You're saying it attaches to an employer. I'm saying it's an employment situation. You either worked for this person and had a job with this person under the terms and benefit and conditions of that employment, or you didn't. You either made an application to be hired, or you were something else. Here, he's clearly an applicant for employment. That's a substantial evidence question. That's what they're trying to do, is they're trying to bring in speculative arguments about, hey, maybe he's not really an applicant for employment. That's contrary to the substantial evidence of record. That's analytically different than what does the statute say. The statute says applicants for employment do not get temporary reinstatement. And so we request you grant the petition for review. I thank you for the generous extra time. Thank you. Call the next case.
judges: Henderson, Griffith, Sentelle